Karen L. Moynahan, OSB #954924
karen.moynahan@portlandoregon.gov
Denis M. Vannier, OSB #044406
denis.vannier@portlandoregon.gov
Tony N. Garcia, OSB #061570
tony.garcia@portlandoregon.gov
Michael J. Jeter, OSB #165413
michael.jeter@portlandoregon.gov
Office of City Attorney
1221 SW 4th Ave., Rm. 430
Portland, OR 97204

    *Of Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **MASONRY BUILDING OWNERS OF OREGON**, an Oregon mutual benefit nonprofit corporation, **FOUNTAIN VILLAGE DEVELOPMENT LLC**, an Oregon limited liability company, and **JIM A. ATWOOD**, in his capacity as trustee of the Jim. A. Atwood Trust dated August 10, 2017,<br><br>    PLAINTIFFS,<br><br>v.<br><br>**TED WHEELER**, in his official capacity as Mayor of the City of Portland and Commissioner in charge of the Bureau of Development Services, **JO ANN HARDESTY**, in her official capacity as Commissioner in Charge of the Fire Bureau and **CITY OF PORTLAND**, an Oregon municipal corporation,<br><br>    DEFENDANTS. | Case No. 3:18-cv-02194-AC<br><br>**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER** Pursuant to Fed. R. Civ. P. 26(c)<br><br>*Expedited Hearing Requested* |

Page 1 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

**Local Rule 7-1 Certificate of Compliance**

In compliance with Local Rule 7-1, the parties made good faith efforts to resolve this dispute and have been unable to do so.

Defendants Ted Wheeler, in his official capacity as Mayor of the City of Portland and Commissioner in Charge of the Bureau of Development Services; Jo Ann Hardesty, in her official capacity as Commissioner in Charge of the Fire Bureau; and the City of Portland (collectively "Defendants" or "City") move this Court for a protective order providing that Plaintiffs may not depose long-time Portland City Commissioner Dan Saltzman ("Commissioner Saltzman") regarding acts he undertook in his legislative capacity relating to the unreinforced masonry ordinance ("URM Ordinance") at issue in this case.[1] Under well-established federal, state, and local law, legislators are entitled to legislative immunity for their legislative acts and may not be held to account by the judicial branch nor questioned about those acts. Accordingly, the scope of Commissioner Saltzman's deposition must be limited to any acts he took in his executive or administrative capacity to actually enforce or direct enforcement of the Ordinance after its adoption.[2] Otherwise, Commissioner Saltzman is entitled to legislative immunity, and he may not be compelled to testify about his legislative acts.

### STANDARDS

Rule 26(c) provides, in relevant part, that "[a] party or any person from whom discovery is sought may move for a protective order . . . on matters relating to a deposition." Fed. R. Civ. P.

---

[1] Commissioner Saltzman left office effective December 31, 2018, after twenty years of service on the Portland City Council. It is undisputed that Commissioner Saltzman's acts relating to the URM Ordinance were undertaken in his official capacity as Portland City Commissioner.
[2] The City of Portland has a commission form of government, and City commissioners exercise executive and administrative powers over the bureaus assigned by the Mayor to their departments. Portland City Charter Section 2-301 and 2-302.

Page 2 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." *Id.* Courts have broad discretion in determining whether the issuance of a protective order is appropriate. *Lee v. City of Los Angeles*, 908 F.3d 1175, 1182 (9th Cir. 2018). A district court, however, "abuses its discretion when it makes an error of law" and "[b]ecause the application of a legal privilege is 'essentially a legal matter' that is reviewed de novo[.]". *Id.* (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996); *Al-Haramian Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007)).

## DISCUSSION

Plaintiffs challenge the constitutionality of City Ordinance 189201, adopted October 10, 2018, clarified by City Ordinance 189309 on December 19, 2018, and amended again on February 27, 2019, by City Ordinance 189399. Plaintiffs seek to depose Commissioner Saltzman regarding his purpose in supporting the URM Ordinance prior to his December 31, 2018 retirement.

Commissioner Saltzman's acts within the legislative sphere related to the URM Ordinance are immune from judicial interference and he cannot be questioned at deposition regarding them. Legislative immunity extends to all legislative acts, including the power to investigate whether legislative action is needed. Whether an act is legislative is determined using four factors described in greater detail below. In this case, all of Commissioner Saltzman's acts leading up to and culminating in the passage and amendment of the URM Ordinance were

legislative in nature and therefore protected. *See Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (holding that local legislators' ordinance-related acts were protected by legislative immunity).

### I.     Legislative Immunity Law

The Supreme Court in *Bogan* analyzed the common-law history of legislative immunity and unequivocally held that local legislators such as Commissioner Saltzman are "absolutely immune from suit under § 1983 for their legislative activities." 523 U.S. at 48–49. The Court elaborated: "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id.* at 52. Legislative immunity is a form of absolute immunity that applies to all actions taken "in the sphere of legitimate legislative activity." *Id.* at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

In *Bogan*, the actions at issue related to an ordinance eliminating a local government agency that employed a single person. *Id.* at 47. The former employee claimed that her position was eliminated in retaliation for her exercise of her First Amendment rights. *Id.* The Court explained that the actions "stripped of all considerations of intent and motive" were legislative in nature. *Id.* at 55. The Court found that "[t]he ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56.[3]

---

[3] The *Bogan* Court also noted a so-called "ministerial exception" to legislative immunity. Where the law requires that a public officer undertake a ministerial act, such as levying a tax, but the officer refuses to do so, the officer may be liable for that conduct. *Id.* at 51–52 (citing *Amy v. Supervisors*, 11 Wall. 136, 20 L. Ed. 101 (1871)). The essence of this exception is that the legislator lacks all discretion regarding the act, rendering it ministerial. *Id.*

Since *Bogan,* federal courts have refined the analysis of determining whether an act is legislative in nature. The Ninth Circuit has held: "We do not look to 'defined categories of government acts but [to] the character and effect of the particular act at issue' to determine if the act is legislative." *Schmidt v. Contra Costa Cty.*, 693 F.3d 1122, 1135 (9th Cir. 2012) (quoting *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010) (internal quotation marks and citations omitted)). "[T]he question of the intent of the individual defendants is strictly off-limits in the legislative immunity analysis." *Cmty. House*, 623 F.3d at 960.

The Ninth Circuit considers the following four factors in determining whether an act is legislative: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. Cty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (internal quotation marks and citations omitted). "The first two factors are largely related, as are the last two factors, and they are not mutually exclusive." *Cmty. House*, 623 F.3d at 960.

The Oregon Supreme Court has also recognized the existence of the legislative privilege and has looked to United States Supreme Court authority in applying it to local legislative bodies.

> [T]he genesis of the Speech or Debate Clause is the common law privilege protecting the speech of legislators. The [United States Supreme Court] . . . distinguished between the need of the legislature to inform itself and the quite separate function of informing the public of legislative activities. The former was held by the Court to be protected by the Speech or Debate Clause because the informing function as so understood is an essential part of the legislative process.

Page 5 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

*Adamson v. Bonesteele,* 295 Or. 815, 821, 671 P.2d 693 (1983); *Noble v. Ternyk*, 273 Or. 39, 43–45, 539 P.2d 658 (1975) (holding that in Oregon, absolute legislative privilege applies to local legislators).

Legislative immunity is also expressly set forth in the Portland City Charter's speech and debate clause, found at Section 2-115: "A member of the Council for words uttered in debate therein shall not be questioned in any other place."

## II.     All of Commissioner Saltzman's Legislative Acts Relating to the URM Ordinance Are Entitled to Legislative Immunity

Commissioner Saltzman voted in favor of City Council's June 13, 2018 Resolution No. 37364, which directed City staff to develop Portland City Code language related to seismic retrofitting, *inter alia*. He voted in favor of the October 10, 2018, City Ordinance No. 189201, mandating the placarding, tenant notification, and acknowledgement requirements at issue in this litigation. Finally, on December 19, 2018, Commissioner Saltzman voted in favor of City Ordinance 189309, which clarified an ambiguity in the October ordinance.

Legislative immunity applies to a broad range of legislative acts. *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (anything generally done in a legislative chamber by its members relating to the chamber's business). The Supreme Court in *Bogan* found that the local legislators' actions relating to the ordinance at issue were quintessentially legislative. Those acts included: voting for the ordinance; introducing a budget; and signing the ordinance into law. 523 U.S. at 44; *see also Gravel v. United States*, 408 U.S. 606, 621 (1972) (legislators and their aids cannot be questioned about committee meetings and actions); *Tenney*, 341 U.S. at 378 (legislators immune for committee oversight investigations); *Cmty. House*, 623 F.3d at 959–64 (leasing and selling decisions); and *Schmidt*, 693 F.3d at 1132 (adopting and applying policies). All of Commissioner

Page 6 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

Saltzman's acts relating to the Ordinance, up to and including its adoption and amendment, are protected by legislative immunity.

### (1) Whether the Acts Amounted to Ad Hoc Decision Making

Ad hoc decisions are based on the particular circumstances of a case and do not "effectuate policy or create a binding rule of conduct." *Schmidt*, 693 F.3d at 1136 (quoting *Kaahumanu*, 315 F.3d at 1220). The court distinguishes between an ad hoc decision made with a particular purpose as opposed to a coordinated policy. *Id.* (citing *Cmty. House*, 623 F.3d at 961). Any actions Commissioner Saltzman undertook that contributed to the promulgation and enactment of the Ordinance are, by definition, legislative in nature. In *Bogan* the Supreme Court established that passing an ordinance reflects discretionary, policymaking decisions covered by the immunity. 523 U.S. at 55–56.

### (2) Whether the Policy Applies to a Few Individuals or the Public at Large

The court disfavors legislative immunity where the act applies to a few individuals. *Schmidt*, 693 F.3d at 1136. "However, '[a]n act need not affect a city's entire population in order to be considered legislative. It is sufficient that the act affects a discrete group of people or places.'" *Id.* (quoting *Cmty. House*, 623 F.3d at 960). The court in *Schmidt* explained that this factor is a question of degree and that it might not always provide an answer as to whether an act is legislative. *Id.*

The Ordinance applies to the public at large. Even though a subset of the public, URM building owners, are directly affected by the ordinance, this factor still favors immunity. Indeed, the Supreme Court in *Bogan* concluded that acts relating to an ordinance eliminating a single employee's position were entitled to legislative immunity. *Bogan*, 523 U.S. at 56.

Page 7 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

### *(3) Whether the Act is Formally Legislative in Character*

When considering this factor, the court looks to see, for example, whether the decision was made through voting or an equivalent legislative procedure. *Schmidt*, 693 F.3d at 1137. "The act of voting on and passing ordinances and resolutions pursuant to correct legislative procedures is 'formally and indisputably legislative.'" *Id.* (quoting *Cmty. House*, 623 F.3d at 960).

### *(4) Whether the Act Bears the Hallmarks of Traditional Legislation*

Finally: "The hallmarks of traditional legislation include the use of discretion, the making of policy that implicates budgetary priorities and the provision of services, and prospective implications that reach beyond the particular persons immediately impacted." *Id.* at 1137 (citing *Kaahumanu*, 315 F.3d at 1223).

*Bogan* and *Schmidt* make clear that decisions relating to the enactment of an ordinance bear the hallmarks of traditional legislation. Here too, the steps leading up to and including the adoption of the URM Ordinance are indisputably legislative.

### III. Legislative Immunity Protects Local Legislators from Being Compelled to Testify at Court Proceedings Regarding Their Legislative Acts

Legislative immunity provides a testimonial privilege prohibiting judicial inquiry into local legislators' acts, motivations, and deliberations. In a recent published decision, the Ninth Circuit held that "legislative privilege protects local officials from being deposed." *Lee*, 908 F.3d at 1178. *Lee* is controlling here. In that case, the Ninth Circuit affirmed the district court's grant of a protective order prohibiting the plaintiffs from questioning city officials—including a former city councilmember—regarding legislative acts, motivations, and deliberations relating to an ordinance. *Id.* Relying on Supreme Court precedent, the *Lee* court found:

> While the Court acknowledged that "[t]he legislative or administrative history may be highly relevant," it nonetheless found that even "[i]n extraordinary instances . . . such testimony frequently will be barred by privilege." Applying this precedent, we have likewise concluded that plaintiffs are generally barred from deposing local legislators, even in "extraordinary circumstances."

908 F.3d at 1187–88 (citations omitted).

As the Supreme Court explained in *Tenney*:

> The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. . . . [I]t was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned.

341 U.S. at 377 (citations omitted); *Bogan*, 523 U.S. at 54–55 (quoting the same). "[W]hen a local legislator exercises discretionary powers, he 'is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed.'" *Id.* at 50 (quoting *Wilson v. New York*, 1 Denio 595 (1845)).

The Ninth Circuit explained in *Community House, Inc.*:

> [I]t is not the within the province of the courts to second-guess the difficult policy decisions legislators must make simply because a different decision might have been made after weighing the immediate needs of a disadvantaged group of local citizens against the possibility of offending a constitutional or statutory right.

623 F.3d at 962.

The Oregon Supreme Court has similarly held that the Oregon Constitution's Speech and Debate Clause (tracked by Portland's Charter Section 2-115) protects legislators from compelled inquiry and that legislative functions are not limited to "delivering an opinion, uttering a speech or haranguing in debate." *State v. Babson*, 355 Or. 383, 423, 326 P.3d 559 (2014), (quoting

Page 9 –  DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)

*Coffin v. Coffin*, 4 Mass. 1, 27 (1808)). The *Babson* Court held that the privilege extends to acts comprising the legislative process, but not post-enactment enforcement actions. *Id.* The Court noted that "the line between enactment and enforcement may be difficult to draw." *Id.* at 426.

> To the extent that legislators seek information about how a law would be or is being enforced, for purposes of enacting or amending legislation, those communications would likely be protected by the Debate Clause. When legislators become involved in actually directing or carrying out enforcement of a law, however, and they do so outside the process of enacting or amending a law, they cannot turn to the Debate Clause to shield their activities.

*Id.*

In this case, Commissioner Saltzman cannot be compelled to testify regarding the development, adoption, or amendment of the URM Ordinance. "[T]he judicial process must not be allowed to improperly intrude on the legislative process or unnecessarily burden the time and actions of individual legislators." *Id.* at 427. If Plaintiffs seek to determine the City's public interest underlying the Ordinance, they have the traditional forms of legislative history available to them. As a matter of law, Plaintiffs cannot attempt to establish the City's purpose in adopting the URM Ordinance by questioning Commissioner Saltzman about his purposes.

## IV.    Plaintiffs' Examination of Commissioner Saltzman Must Be Limited to His Executive or Administrative Acts as a Commissioner in Charge

Commissioner Saltzman was the Commissioner in Charge of the Portland Bureau of Fire & Rescue prior to and during the adoption of the URM Ordinance. He was also the Commissioner in Charge of the Portland Bureau of Emergency Management from August of 2018 to his retirement on December 31, 2018. Plaintiffs may examine Commissioner Saltzman only about the actions—if any—he took in his executive capacity to enforce the URM Ordinance. He may not, however, be deposed about the legislative process leading up to and

culminating in the adoption and amendment of the URM Ordinance. "Local government officials are entitled to legislative immunity for their legislative actions, whether those officials are members of the legislative or the executive branch." *Cmty. House*, 623 F.3d at 959.

To paraphrase the Oregon Supreme Court in *Babson*, if he "bec[a]me involved in actually directing or carrying out enforcement of [the URM Ordinance]," and if he did so "outside the process of enacting or amending" the Ordinance, the Speech and Debate Clause does not shield those specific activities from inquiry. *Babson*, 355 Or. at 427. While limited inquiry regarding executive acts may be permitted, the Speech and Debate clause "does not countenance fishing expeditions or harassment of legislators by parties in civil or criminal matters." *Id.*

This Court should order that Plaintiffs may *only* inquire as to whether Commissioner Saltzman became involved in actually directing or carrying out enforcement of the URM Ordinance after its adoption, outside the process of enacting or amending the Ordinance, and if so as to what actions he took to direct or carry out enforcement. All other inquiry of Commissioner Saltzman is barred by legislative immunity.

## CONCLUSION

Based on the foregoing, the City respectfully requests that the Court enter a protective order prohibiting Plaintiffs from deposing Commissioner Saltzman regarding his legislative acts relating to the URM Ordinance.

Dated: April 22, 2019

Respectfully submitted,

*s/ Michael J. Jeter*
Michael J. Jeter, OSB # 165413
Assistant Deputy City Attorney
Office of City Attorney
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
503-823-4047

**Local Rule 26-3(b) Certificate of Compliance**

This brief complies with the applicable word-count limitation under LR 26-3(b) and 7-2(b) because it contains 2927 words, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

Page 12 –   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER Pursuant to Fed. R. Civ. P. 26(c)